ACCEPTED
07-15-00070-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
7/14/2015 2:04:27 PM
Vivian Long, Clerk

No. 07-15-00070-CV

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
7/14/2015 2:04:27 PM
VIVIAN LONG
CLERK

In The

## COURT OF APPEALS

### SEVENTH DISTRICT OF TEXAS

Amarillo, Texas

---

## JANE FULLER JACKSON, A/K/A JANE FULLER MORRIS,
*Appellant*

**v.**

## WILDFLOWER PRODUCTION COMPANY, INC.,
*Appellee*

---

*On Appeal from the 31st District Court,*
*Wheeler County, Texas*
*Cause No. 12,664*
*Honorable Steven R. Emmert, Judge Presiding*

---

## APPELLEE'S BRIEF

No. 07-15-00070-CV

In The

# COURT OF APPEALS

SEVENTH DISTRICT OF TEXAS

Amarillo, Texas

---

**JANE FULLER JACKSON, A/K/A JANE FULLER MORRIS**
*Appellant*

v.

**WILDFLOWER PRODUCTION COMPANY, INC.**
*Appellee*

---

*On Appeal from the 31st District Court, Wheeler County, Texas*
*Cause No. 12,664*
*Honorable Steven R. Emmert, Judge Presiding*

---

# BRIEF OF APPELLEE

**Oral Argument Requested Conditionally**

---

THE FOUTS LAW FIRM
P. O. Box 5187
Lubbock, Texas 79408-5187
(806) 741-0373 - Phone
(806) 741-1491 – Fax
ajfpat@nts-online.net – E-mail
Aubrey J. Fouts
SBN 07315000
        *Of the Firm*
ATTORNEYS FOR APPELLEE

14 July 2015

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................ iii

INDEX OF AUTHORITIES ................................................................................ vi

STATEMENT OF THE CASE ............................................................................. 1

STATEMENT REGARDING ORAL ARGUMENT ............................................ 1

STATEMENT OF THE FACTS ........................................................................... 2

SUMMARY OF ARGUMENT ............................................................................ 7

ARGUMENT AND AUTHORITIES .................................................................. 7

RESPONSE TO APPELLANTS' POINT OF ERROR NO. 1 –

AS A MATTER OF LAW, APPELLANT DID NOT WAIVE FOR CONSIDERATION OF THE TRIAL COURT WHETHER THE NOVEMBER 23, 1993 DEED WAS A QUITCLAIM DEED. ... 8

RESPONSE TO APPELLANTS' POINT OF ERROR NO. 2 –

SINCE THE NOVEMBER 30, 1993 DEED WAS A QUITCLAIM DEED, WILDFLOWER WAS CHARGED WITH ACTUAL NOTICE, AS A MATTER OF LAW, OF THE EXISTENCE OF THE NOVEMBER 23, 1993 DEED AT THE TIME OF THE NOVEMBER 30, 1993 DEED, CONCLUSIVELY NEGATING BFP STATUS TO WILDFLOWER AND THEREBY, AS A MATTER OF LAW, VESTING LEGAL AND EQUITABLE SUPERIOR TITLE TO THE DISPUTED MINERAL AND ROYALTY OWNERSHIP IN THIS CASE IN APPELLANT, AS SUCCESSOR TO HER HUSBAND AS GRANTEE UNDER THE NOVEMBER 23, 1993 DEED. (IN RESPONSE TO FINDING OF FACT NO. 4 AND CONCLUSION OF LAW NOS. 1 - 4 AND 6) .................................................................................................................. 9

APPELLANT'S AUTHORITIES ....................................................................... 14

CONCLUSION AND PRAYER ........................................................................ 17

CERTIFICATE OF COMPLIANCE ................................................................. 18

CERTIFICATE OF SERVICE ........................................................................... 18

# INDEX OF AUTHORITIES

*Cases:*                                                                                          *Page*

*Benton Land Co. v. Jopling,*
    300 SW 28 (Tex. Com. App. 1927, judgmt adopted). .......................................................9, 10, 11

*Bryan v. Thomas,*
    365 SW2d 628, 630 (Tex. 1963)...........................................................................................10, 14

*Bush v. Bush,*
    336 SW3d 722, 732 (Tex. App. Houston [1st District] 2010, no pet.)......................................8

*Cartwright v. Trueblood,*
    39 SW 930, 931 (Tex. 1897)...................................................................................................17

*Cook v. Smith,*
    174 SW 1094 (Tex. 1915);.............................................................................................9, 11, 16

*Enerlex, Inc. v. Amerada Hess Inc.,*
    320 SW3d 351 (Tex. App. Eastland 2009, no pet.) .................................................................14

*Garrett v. Dils Company,*
    299 SW2d 904, 906 (Tex. 1957)..............................................................................................17

*Geodyne Energy Income Production Partnership IE v. Newton Corp.,*
    161 SW3d 482 (Tex. 2005).................................................................................................14, 15

*Green v. Mining and Development,*
    225 SW 548 (Tex. Civ. App. - Austin, 1920, writ refd) .........................................................16

*Hahn v. Love,*
    394 Sw3d 14, 25 (Tex. App. Houston [1st District] 2012, no pet.)..........................................13

*Heritage Resources Inc. v. Hill*
    104 SW3d 612, 619 (Tex. App. El Paso 2003, no pet.)...........................................................8

*In re Interest of A. M.,*
    18 SW3d 830, 841 (Tex. App. Dallas, 2013, no pet.);.............................................................8

*Kanan v. Plantation Homeowner's Assn Inc.,*
    407 SW3d 320, 330 (Tex. Com. App. Corpus Christi, 2013, no pet.).....................................14

# INDEX OF AUTHORITIES (Continued)

*Luckel v. White,*
   819 SW2d 459 (Tex. 1991)..................................................................13

*Miller v. Hodges,*
   260 SW 168, 170 (Tex. App. 1924, judgmnt adopted).........................10, 14

*Neel v. Killian Oil Co. Ltd.,*
   88 SW3d 334 339 (Tex. Civ. App. San Antonio 2002, no pet.).................12

*Nobel Mortgage and Investment v. D & M Vision, Inc.,*
   340 SW3d 65, 75 (Tex. App. Houston [1st District] 2011, no pet.)............14

*Porter v. Wilson,*
   389 SW2d 65, 654 (Tex. 1965).............................................................15

*Rogers v. Ricane Industries Inc.,*
   884 SW2d 763 (Tex. 1994)...............................................................14, 15

*Stonum v. Schultz,*
   138 SW2d 825, 828 (Tex. Civ. App. Galveston, 1940, no writ)................12

*Triangle Supply Co. v. Fletcher,*
   408 SW2d 765, 767-68 (Tex. Civ. App. Eastland, 1966, err ref'd, n.r.e.)...15

*Ulbrecht v. Friedsam,*
   325 SW2d 669, 673 (Tex. 1959).............................................................13

*U.S. Lawns, Inc. v. Castillo,*
   347 SW3d 844, 846 (Tex. App. Corpus Christi 2011, rev. den)..................8

*Waters v. Ellis,*
   312 SW2d 231, 234 (Tex. 1958).............................................................17

*White v. Dupree,*
   40 SW 962, 964 -965 (Tex. 1897)..........................................................12

*Whitehead v. State,*
   724 SW2d 111, 113 (Tex. App. Beaumont, 1987, no writ)......................16

*Wilson v. Wilson,*
   118 SW2d 403 (Tex. Civ. App. Beaumont, 1938, no writ)...................12, 16

# INDEX OF AUTHORITIES (Continued)

**STATUTES AND RULES**

TEXAS RULES OF APPELLATE PROCEDURE

    Rule 38.1(f) .............................................................................................7

    Rule 38.1(g).............................................................................................2

TEX. PROP. CODE

    § 13.001(a)..............................................................................................14

**TREASTISE**

Proposed Texas Title Examination by Owen Anderson .........................................9

*Appendix* .....................................................................................*TABS 1 - 2*

No. 07-15-00070-CV

In The

## COURT OF APPEALS

SEVENTH DISTRICT OF TEXAS

Amarillo, Texas

## JANE FULLER JACKSON, A/K/A JANE FULLER MORRIS
*Appellant*

**v.**

## WILDFLOWER PRODUCTION COMPANY, INC.
*Appellee*

## BRIEF OF APPELLEE

**TO THE HONORABLE COURT OF APPEALS:**

NOW COMES **WILDFLOWER PRODUCTION COMPANY, INC.**, Plaintiff and Counter-Defendant in the trial court, hereinafter referred to as Appellee, and files this Brief of Appellee to support the trial court's judgment being affirmed. In support, Appellee would respectfully show the Court the following:

### STATEMENT OF THE CASE

Appellee does not disagree with the Statement of the Case in the Appellant's Brief.

### STATEMENT REGARDING ORAL ARGUMENT

The Appellee requests oral argument only if the Court grants the Appellant's request for oral argument. Appellee would request that its counsel be permitted to submit oral argument in

1

response to the oral argument of the Appellant, if allowed. The Appellee contends that the facts and legal arguments in the briefs are adequately presented and the decisional process would not be significantly aided by oral argument.

## STATEMENT OF FACTS

Appellee disagrees with the Statement of Facts in Appellant's brief because it does not state the facts concisely and without argument as required by Rule 38.1(g) of the Texas Rules of Appellate procedure.

The chain of title of the Appellant and Appellee, leading to the controversy in this appeal, began with the execution and delivery by R. P. Fuller and wife, Lloyd Elaine Fuller, of a mineral deed to their three children, Rex Fuller ("Rex"), Ann Fuller Cope, a/k/a Lydick ("Ann"), and the Appellant, Jane Fuller Jackson, a/k/a Jane Fuller Morris ("Jane"). (3RR Exh 1). The deed conveyed to the Grantees, share and share alike, an undivided ¼ interest in oil, gas and other minerals that may be produced from land in Wheeler County, described in the deed.

The property included two tracts, one comprising of 121.86 acres of land and one containing 155.4 acres of land, for a total of 277.26 acres.

The Grantees, Rex, Ann and Jane, executed an oil and gas lease dated April 7, 1977 recorded in volume 260, page 383 of the Deed Records of Wheeler County, Texas, covering the property.

On November 14, 1978, a Designation of Gas Unit was executed, which included the property described in the mineral deed from Robert P. Fuller and Lloyd Elaine Fuller to the children (3RR PExh. 3). That document included the lease executed on April 7, 1977 and was referred to as lease no. TX-8-338 in the gas unit.

In addition, a Declaration of Pooling was executed and recorded in volume 385, page 78 of the Deed Records of Wheeler County, Texas on July 25, 1989, covering the property

2

described in the mineral deed in 3RR PExh. 1, with the same descriptive language as the mineral deed had recited. (3RR PExh 4).

R. P. Fuller, beginning in 1936, became involved in the acquisition of mineral interests and drilling of wells. Rex and his father were affiliated in the oil and gas business, after Rex became an adult. (2RR 10). R. P. Fuller and Lloyd Elaine Fuller, began a practice of including family members, including Rex and the two sisters, in the oil and gas business in which they were involved. (2RR 11). This practice involved transfers of mineral interests to the children, in various mineral properties including the property the subject of this appeal. (2RR 11 - 12).

Jane married Leete Jackson, III, who became involved in her business. (2RR 11 - 12).

In the 70's and 80's the oil and gas business, in which the family members were involved, required financing, which was provided through bank loans, including First National Bank of Lubbock. (2RR 15). Rex and his sisters participated in signing deeds of trust to secure loans obtained for the operation of the business. (2RR 16).

In March 1971 an entity known as The Lydick-Jackson Joint Venture was formed with Ann and Jane being the participants. (2RR 16).

In 1980 there was a severe decline in oil and gas prices. (2RR 17). As a result, the Fullers were unable to meet their financial obligations. (2RR 17). Suits were filed by two banks in the 80's which resulted in the revocation of powers of attorney from Jane and Ann to Rex and their father with Jane's revocation being admitted into evidence. (2RR 18, PExh 21).

There was a disruption in the communication and involvement of Rex with the two sisters after R. P. Fuller died in 1988. (2RR 19). For several years, after Mr. Fuller died, there was no communication between Rex and his sisters. (2RR 20 - 21).

Rex, individually, and as Independent Executor of the Estate of R. P. Fuller, Jane and Ann, individually, and Lydick Jackson Joint Venture, executed a Deed of Trust dated July 18,

3

1990 to secure a Note to First National Bank of Lubbock in the amount of $1,000,000,00. The deed of trust renewed and extended prior notes and liens of the same grantors. (3RR PExh 5).

The deed of trust included a list of oil and gas properties, including properties in Wheeler County which described properties in the gas unit created by the Designation Gas Unit. (3RR PExh 3). The property descriptions attached to the deed of trust, as page two under the heading "Wheeler County, Texas" included the property described in the mineral deed from R. P. Fuller and Lloyd Elaine Fuller September 14, 1972 (3RR P1), by its inclusion in the Designation of Gas Unit description.

Jane and Ann executed a deed of trust dated June 15, 1990, individually and as members of the Lydick-Jackson Joint Venture to First National Bank of Lubbock to secure a promissory note in the amount of $250,000.00, dated June 15, 1990. (3RR PExh.6). That deed of trust described the 640 acre gas unit as described in the deed of trust mentioned in the above paragraph.

The First National Bank in Lubbock threatened foreclosure on the deeds of trust it held, described above, and Rex, acting on behalf of Wildflower Production Company, Inc., Appellee, had discussions with Gene Williams of First National Bank, who was a Senior Vice President of Lending for the bank. (2RR 27). The discussion involved an agreement for the bank to sell the properties at foreclosure, liquidate them with the bank not pursuing a deficiency judgment against the Grantors in the deeds of trust. (2RR 28-29). Rex discussed with Mr. Williams, before the foreclosure, an interest in acquiring some of the properties that would be involved in the foreclosure. (2RR 29).

After his discussions with Mr. Williams, Rex sought to borrow funds, to the extent of his ability, to purchase the mineral interest of Ann, Jane and the Lydick-Jackson Joint Venture. (2RR 30).

First National Bank of Lubbock had organized an entity known as FBGA SERVICES INC. to handle the acquisition of the foreclosed properties. (2RR 44-45; 92).

On September 7, 1993 there was a foreclosure sale conducted by Richard Hubbert, substitute trustee, under the deeds of trust in the Plaintiff's Exhibits 6 and 7 of the Reporter's Record, Vol. 3. Two substitute trustee's deeds were executed, in the form of general warranty deeds, conveying the property the subject of the deeds of trust. The trustee's deeds were dated September 7, 1993. The Grantee in the trustee's deeds was FBGA SERVICES INC. (3RR PExh 7 and 8).

Immediately after the foreclosure proceedings Rex discussed with First National Bank of Lubbock, buying properties which had been foreclosed for a price of $200,000.00, for the interest he proposed to acquire and he sought financing to fund the transaction. (2RR 41).

Rex secured a loan commitment from South Plains Bank in Levelland for $200,000.00. (2RR 42-43; 3RR PExh. 34).

The transaction involving Rex's company, Wildflower Production Company, Inc. acquiring foreclosed properties on the Fuller interests occurred November 20, 1993. At the closing, the bank in Levelland on behalf of Wildflower Production Co. Inc., delivered a cashier's check in the amount of $200,000.00 and picked up the mineral deed involved. (2RR 53; 3RR PExh. 10). Rex had no information, on November 30, 1993, about any acquisition of Leete Jackson in conflict with the interest being acquired. (2RR 53 - 54). The conveyance was by mineral deed without warranty. (3RR PExh 10).

The mineral deed to Wildflower Production Company, Inc. was recorded on December 14, 1993 in the Deed Records of Wheeler County, Texas. (3RR PExh 10).

A mineral deed without warranty was executed by FBGA SERVICES INC. as Grantor, to Leete Jackson, III, as Grantee, dated November 23, 1993 and recorded on December 3, 1993.

5

(3RR PExh 11).That deed contained the same language as the Wildflower deed, except the interest being conveyed was described as "that interest previously owned by Jane Fuller Jackson," which was a .090254 royalty interest and the property was described in the language of the original mineral deed to the children in 1993. (3RR PExh 1).

The property description in the mineral deed without warranty to Wildflower Production Company, Inc. was that described in the bank's deeds of trust and the trustee's deeds as related to the Wheeler County property on Exhibit "A" attached to the deed without warranty. (3RR PExhs 5, 6, 7, 8).

John Sims, who was an attorney for First National Bank of Lubbock and FBGA SERVICES INC., testified as a witness for Jane. Mr. Sims testified that he had a conversation with Rex, after the deed to Leete Jackson, III was delivered, in which Rex asked him if FBGA was interested in selling other minerals that had been foreclosed upon. (2RR 90). He said Rex indicated that he knew the bank had sold the property to Leete Jackson, III. (2RR 90 - 91)

Rex learned that there was a deed to Leete Jackson, III which conflicted with the Wildflower deed, as a result of a division order title opinion for Linn Energy. (2RR 57; 3RR PExh 18). The opinion was written by Kimberly Warminske of the Amarillo firm of Sprouse, Shrader and Smith, P.C. and was a redrafted version of a Division Order Title Opinion for Linn Energy related to Stein I-1H Well in Wheeler County dated January 21, 2011. Ms. Warminske describes the title situation, which is the subject of this appeal, and concluded that, due to the Leete Jackson, III deed not being on record at the time of conveyance to Wildflower Production Company, Inc. pursuant to the Texas recording statutes, Wildflower would own the 1/12 mineral interest previously owned by Jane Fuller Jackson unless Wildflower had notice of the prior unrecorded deed. The question as to whether Wildflower had notice was recited to be a question of fact. (3RR PExh 18, attached opinion).

6

Linn Energy suspended all proceeds of production on both the interest attributable to Jane and the interest of Ann. The interest attributable to Ann was subsequently lifted. (2RR 58 - 59).

## SUMMARY OF ARGUMENT

Appellee contends that the issue of Wildflower Production Company, Inc. having actual or constructive notice of the prior unrecorded deed to Leete Jackson, III is conclusively determined by the finding of the trial court that Wildflower Production Company, Inc. did not have actual or constructive notice of the deed to Leete Jackson, III, which was not the subject of a Point of Error in Appellant's brief. Additionally, the trial court's determination of the credibility of the witnesses, who testified on that issue, is the exclusive province of the trial court.

Appellee further contends the deed to Wildflower, under the applicable rules of construction of the deed from FBGA to Wildflower is a conveyance of the property involved and not a "quitclaim", as a matter of law.

The issue of whether there was a waiver of the issue as to whether the deed to Wildflower was a "quitclaim deed", is moot, because, as a matter of law, that deed is a conveyance of the property and is not a quitclaim deed.

Wildflower was a bona fide purchaser without notice of the Leete Jackson, III deed.

## ARGUMENT AND AUTHORITIES

### ISSUE OF WILDFLOWER HAVING ACTUAL OR CONSTRUCTIVE NOTICE OF PRIOR DEED TO LEETE JACKSON, III

Appellant's brief does not present a Point of Error related to the factual or legal sufficiency of the evidence to support the trial court's Finding of Fact number 5. (CR 31). The Court found that Wildflower did not have actual or constructive knowledge of the prior deed. Under Rule 38(f) of the Texas Rules of Appellate Procedure the Appellant's brief must state concisely all issues or points presented for review. Unless a trial court's Findings of Fact are

7

challenged by a point of error in the brief, the findings are binding on the Appellate Court. Findings of Fact are the equivalent of a jury's answers and should be attacked on the basis of legal or factually sufficient evidence. *Heritage Resources Inc. v. Hill*, 104 SW3d 612, 619 (Tex. App. El Paso 2003, no pet.). The Court of Appeals may not reverse a judgment for a reason not raised in a point of error. Grounds of error not asserted in points of error are considered to be waived on appeal. *U.S. Lawns, Inc. v. Castillo*, 347 SW3d 844, 846 (Tex. App. Corpus Christi 2011, rev. den).

Further, the trial court is the exclusive judge of credibility of the witnesses. *In re Interest of A. M.*, 418 SW3d 830, 841 (Tex. App. Dallas, 2013, no pet.); *Bush v. Bush*, 336 SW3d 722, 732 (Tex. App. Houston [1st District] 2010, no pet.).

The evidence related to Wildflower's notice, actual or constructive, of the Leete Jackson, III deed, involved testimony of Rex Fuller, John Sims and Jane Morris. The trial court's finding on the notice issue was based on its determination of the credibility of those witnesses and resulted in a finding favorable to Wildflower.

### RESPONSE TO APPELLANT'S POINT OF ERROR NO. 1

AS A MATTER OF LAW, APPELLANT DID NOT WAIVE FOR CONSIDERATION OF THE TRIAL COURT WHETHER THE NOVEMBER 23, 1993 DEED WAS A QUITCLAIM DEED.

Although this point of error recited the deed dated November 23, 1993, it is apparent it was intended to refer to the November 30, 1993 deed, which was the Wildflower deed.

As indicated in the Summary of Argument in this brief, the issue of waiver is considered to be moot by Appellee because, regardless of waiver, the deed to Wildflower, as a matter of law, is a conveyance of the property involved and it is not a quitclaim deed.

8

## RESPONSE TO APPELLANT'S POINT OF ERROR NO. 2.

SINCE THE NOVEMBER 30, 1993 DEED WAS A QUITCLAIM DEED, WILDFLOWER WAS CHARGED WITH ACTUAL NOTICE, AS A MATTER OF LAW, OF THE EXISTENCE OF THE NOVEMBER 23, 1993 DEED AT THE TIME OF THE NOVEMBER 30, 1993 DEED, CONCLUSIVELY NEGATING BFP STATUS TO WILDFLOWER AND THEREBY, AS A MATTER OF LAW, VESTING LEGAL AND EQUITABLE SUPERIOR TITLE TO THE DISPUTED MINERAL AND ROYALTY OWNERSHIP IN THIS CASE IN APPELLANT, AS SUCCESSOR TO HER HUSBAND AS GRANTEE UNDER THE NOVEMBER 23, 1993 DEED. (IN RESPONSE TO FINDING OF FACT NO. 4 AND CONCLUSION OF LAW NOS. 1 - 4 AND 6).

Appellee's response to this issue begins with the established criteria for determination as to whether a particular conveyance document is a quitclaim conveyance or a conveyance of an interest in the property itself.

The established criteria is an area on which the parties agree and is recited in the publication, "Proposed Texas Title Examination Standards" by Owen L. Anderson, which is attached to Appellant's brief as Appendix "G" and which recites the following, at page 14:

> "Texas courts have developed and liberally applied the notion that, if the language of a deed as a whole reasonably implies a purpose to effect a transfer of particular rights in the land, then it will be treated as a conveyance of those rights, not a mere quitclaim, despite the presence of traditional quitclaim language and even the word "quitclaim" itself. See, e.g. *Cook v. Smith*, 174 SW 1094 (Tex. 1915); *Benton Land Co. v. Jopling*, 300 SW 28 (Tex. Com. App. 1927, judgmt adopted).

The court, in *Cook v. Smith* (Tex. 1915), which is cited as authority by Appellant, dealt with a deed which contained language that provided grantor "have bargained, sold, released and forever quitclaimed, and by these presents do hereby bargain, sell, release and forever quitclaim unto (grantee), all my right, title and interest in and to that certain tracts or parcels of land" (described lots in Cottle County). The deed then provided "and all other real estate owned I now own in the town of Paducah, Cottle County, Texas...whether it is set out above or not."

The Supreme Court held this was not a quitclaim, because the statement of intent to convey all property owned in Paducah, Cottle County, Texas indicated intent to convey the property and the deed was sufficient to support Grantee being a bona fide purchaser for value.

9

The court in *Benton Land Co. v. Jopling,* 300 SW 28 (Tex. Com. App. 1927, judgmt adopted) recited the criteria at page 30 of the opinion to be:

> Although, in some respects, the language of an instrument may be appropriate to a quitclaim deed, such language does not fasten upon the instrument the character of a mere quitclaim deed, if other language contained in the instrument fairly indicates a different character. If the language of the instrument as a whole is such as reasonably to imply a specific purpose on the part of the parties to effect a transfer of particular rights in respect to the land described therein, the instrument, so far as such particular rights are concerned, should be treated as purporting a conveyance of the rights themselves, and not a mere quitclaim. This we regard as the underlying principle of the holding, so often made, to the effect that if the language of the instrument fairly implies a purpose to convey the land itself - i.e. the particular rights constituting ownership - the instrument is not a mere quitclaim.

The deed in that case provided that grantor, in consideration of, among other things, the assumption of an existing debt by the grantee and provided the grantor "grants, sells and conveys, and forever quitclaims unto grantee all grantor's right title and interest in 300 acres of land." The Court found the language regarding assumption of debt, was sufficient to show intent to convey the land.

In another Supreme Court case decided in the era in which the law regarding the criteria for determining whether a deed is a quitclaim deed was developed, is *Miller v. Hodges,* 260 SW 168, 170 (Tex. App. 1924, judgmnt adopted).

The Court in that case said:

> "In ascertaining intention in cases of doubt, the court will consider all of the facts and circumstances existing at the time the parties contracted, and will, as nearly as possible assume their position, so as to interpret their language in the light of the circumstances as they were when the transaction was made."

It is Appellee's position that the most important, and decisive, case applicable in this case is *Bryan v. Thomas,* 365 SW2d 628, 630 (Tex. 1963).

In that case the court considered the construction of a mineral deed to determine if the instrument was a quitclaim deed or a conveyance of the interest involved, which contained the following provisions:

10

"...the grantors have granted, sold, conveyed, assigned and delivered and by these presents do grant, sell, convey, assign and deliver unto said grantee *all of our undivided interest* in and to all of the oil, gas, and other mineral in and under and that may be produced from the following described land situated in Hunt County, Texas ...."

This deed also granted to the grantee

...the right of ingress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other mineral in and under said lands, together with all royalties and rentals that might be provided in future oil and gas leases.

The deed concluded with the usual habendum and general warranty clauses.

The Court states, with regard to the effect of this language:

To remove the question from speculation and doubt we now hold that the grantee in a deed which purports to convey all of the grantor's undivided interest in a particular tract of land, if otherwise entitled, will be accorded the protection of a bona fide purchaser.

The Court cited both *Cook v. Smith*, 174 SW 1094 (Tex. 1915) and *Benton Land Co. v. Jopling*, 300 SW 28, (Tex. Comm. App. 1927, judgmnt adopted) in support of its conclusions.

Those cases are cited and discussed above in this brief.

The deed to Wildflower, the subject of this appeal, contained the following provisions:

...grant, bargain, sell, convey, transfer, assign and deliver, unto Wildflower Production Company, Inc., P. O. Box 2454, Lubbock, TX 79408, a portion of the Grantor's right, title, interest, estate, and every claim and demand, both at law and in equity, in and to that part of the oil, gas and other minerals in, under, or that may be produced from the following described lands in Wheeler County, State of Texas, being more particularly described in Exhibit "A" attached hereto and made a part hereof, for all purposes whatsoever, being that interest previously owned by Ann Fuller Lydick Clayton a/k/a Margaret Ann Cope and Lydick-Jackson Joint Venture a/k/a Cope-Jackson Joint Venture (address) and Jane Fuller Jackson a/k/a Frances Jane Jackson of (address), *together with the right of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said lands for oil, gas or other minerals, and storing, handling, transporting and marketing the same therefrom with the right to remove from said land all of grantee's property and improvements.*" (Emphasis added.)

The sale was made subject to rights of any existing lessee or assignee under any existing oil and gas lease. The deed then provided:

...it being understood and agreed that said grantee shall have, receive and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties and other

11

benefits which may accrue under the terms of said lease insofar as it covers the above described land from and after the date hereof, *precisely as if the Grantee herein had been at the date of making of said lease, the owner of a similar undivided interest in and to the land described and Grantee one of the lessors therein.* (Emphasis added.)

    *Grantor agrees to execute such further assurances as may be requisite for the full and complete enjoyment of the rights herein.*" (Emphasis added.)

To have and to hold the above described property and easement, with all and singular the rights, privileges, and appurtenances thereunto or in any wise belonging to the Grantee herein its successors and assigns forever."

The only significant difference in the deed construed by the court in <u>Thomas</u> and the deed in our case is the absence of a warranty. That difference is inconsequential in the construction of the deed because a warranty or non-warranty does not affect the construction of the deed as to whether it is a quitclaim or conveyance. *White v. Dupree*, 40 SW 962, 964 -965 (Tex. 1897); *Stonum v. Schultz*, 138 SW2d 825, 828 (Tex. Civ. App. Galveston, 1940, no writ); *Wilson v. Wilson*, 118 SW2d 403 (Tex. Civ. App. Beaumont, 1938, no writ); *Neel v. Killian Oil Co. Ltd.*, 88 SW3d 334 339 (Tex. Civ. App. San Antonio 2002, no pet.).

It is significant, in the evaluation of Appellant's position, that there is no mention in her brief of the relevant language in the Wildflower deed quoted above.

The Wildflower deed, in the description of the rights granted to it, as set out above, clearly reflects an intent that the property is being conveyed to it because those rights would be involved in the ownership of the land. These rights were recited to be granted to the grantee

    ...precisely as if the grantee herein had been at the date of making of said lease, the owner of a similar undivided interest in and to the land described and grantee one of the lessors therein.

That phrase unmistakably confirms the intent that grantee is to receive rights of ownership and not merely "a chance of title", which is the effect of a quitclaim deed.

The intent to convey the property is further confirmed by the commitment of the grantor to "...execute such further assurances as may be requisite for the full and complete enjoyment of the righter herein."

That obligation to provide further assurance to afford complete enjoyment of the rights conveyed is entirely inconsistent with the intent the conveyance be only a quitclaim.

The Appellant's brief makes no mention of the above language and, instead, relies only on the language "grantor's right, title and interest" and the description of a "portion" or "that part" in the interest "previously owned by" the three children.

The restrictive view of Appellant entirely ignores the "4 corners rule" of deed construction which requires the Court to review and consider the entire deed to ascertain the intent of the parties. *Ulbrecht v. Friedsam*, 325 SW2d 669, 673 (Tex 1959).

There is no claim by either party that the Wildflower deed is ambiguous. Therefore, the construction of this deed is a question of law and the court in seeking the intent of the parties' attempts to harmonize all parts of the instrument to give effect to all its provisions. *Luckel v. White*, 819 SW2d 459 (Tex. 1991).

Appellant's reliance on the property description language in the Wildflower deed to support her claim that the deed is a quitclaim is misplaced.

> A property description is sufficient if the writing furnishes, within itself, or by reference to some other existing writing, the means or data by which the particular land may be identified with reasonable certainty. *Hahn v. Love*, 394 Sw3d 14, 25 (Tex. App. Houston [1st District] 2012, no pet.).

The Wildflower deed by reference to the documents involved in the description and the interests involved clearly reflects the property being conveyed to Wildflower, which includes the same property described in the Leete Jackson, III deed.

13

See also *Kanan v. Plantation Homeowner's Assn Inc.*, 407 SW3d 320, 330 (Tex. Com. App. Corpus Christi, 2013, no pet.); *Miller v. Hodges*, 260 SW 168, 170 (Tex. App. 1924, judgmnt adopted).

By statute and case law a bona fide purchaser prevails over a holder of a prior unrecorded interest in the same property. § 13.001 (a) Texas Property Code; *Nobel Mortgage and Investment v. D & M Vision, Inc.*, 340 SW3d 65, 75 (Tex. App. Houston [1ˢᵗ District] 2011, no pet.)

Appellant's Authorities

Appellant cites and relies heavily on *Enerlex, Inc. v. Amerada Hess Inc.*, 320 SW3d 351 (Tex. App. Eastland 2009, no pet.); *Geodyne Energy Income Production Partnership IE v. Newton Corp.*, 161 SW3d 482 (Tex. 2005) and *Rogers v. Ricane Industries Inc.*, 884 SW2d 763 (Tex. 1994). The reliance of Appellant on these authorities is misplaced for the following reasons:

1. The Enerlex case involved a conveyance which failed to quantify the interest conveyed and the facts are not comparable to those in the Wildflower deed in our case. In addition, as noted on page 15 of the article written by Owen L. Anderson, relied on, and attached to, Appellant's brief as Appendix G, the Enerlex opinion does not distinguish or mention Bryan v. Thomas which the writer recognized as the last Supreme Court authority on the issue involved in our case, although it has only been cited in one case since it was decided. The writer also questioned whether the Enerlex opinion represents good law. He notes the Enerlex opinion purports to rely on the Geodyne Energy and Rogers v. Ricane cases and neither of those cases involved the question of whether the grantee could assert bona fide purchaser status.

14

It is of interest that the Eastland Court of Appeals in *Triangle Supply Co. v. Fletcher*, 408 SW2d 765, 767-68 (Tex. Civ. App. Eastland, 1966, err ref'd, n.r.e.), stated the rule regarding a conveyance with language closely similar to the Wildflower granting clause to be:

> "It is also held that an assignment of mineral leases purporting to assign all right, title, and interest of the assignee is not a quitclaim, but conveys the instruments as well as the minerals that the instruments themselves convey."

2.      Rogers v. Ricane Enterprises, Inc. involved a conveyance of an oil and gas lease in which the grantor granted, conveyed, sold, assigned and transferred all its right, title and interest, without warranty of any kind either express or implied. The conveyance did not contain any of the additional rights and obligations as described in the Wildflower deed. In the Wildflower deed there was an *absence of warranty*, not a disclaimer of warranty.

3.      The Geodyne Energy case involved purchase of an offshore mineral lease at an auction. The conveyance was the right, title, and interest of the grantor and there was a disclaimer of all warranties of title, express or implied. This case is distinguishable from our case on the same basis as the other cases discussed.

Appellant, apparently, is contending that the Bryan v. Thomas case should be ignored because it has only been cited one time. We respectfully suggest that is not a valid reason for the Court, in this case, to ignore that opinion because of the close similarity of the facts to our case, and additional conveyance of rights in the Wildflower deed which makes that deed even stronger than the conveyance in the Thomas case.

We also note the Supreme Court, two years after the Bryan v. Thomas decision, rendered a decision which is instructive in reaching the correct decision in this case.

The case is *Porter v. Wilson*, 389 SW2d 65, 654 (Tex. 1965).

15

In that case the court considered whether the words "bargain, sell, release and forever quitclaim all our right, title and interest" in the land involved was conclusive that the conveyance was a quitclaim. The court held those words were not fatal to the claim that the conveyance was not a quitclaim. The Court said:

> In cases where in the courts have construed an instrument employing the words "all my right, title and interest" as one purporting to convey the land itself, they have found some wording which evidenced an intention to convey the land itself rather than the right title and interest of the grantor.

The wording in the Wildflower deed fulfills that requirement.

The court in <u>Wilson</u> cites <u>Cook v. Smith</u>, discussed above in this brief, as supporting its statement. The court in Wilson case concluded that there was not wording evidencing an intention to convey the land in that case and treated the conveyance as a quitclaim.

The Appellant cited the <u>Wilson</u> case in support of her position at pages 14, 22 and 23 of her brief, without reference to the significant difference in the language of the Wildflower deed and the deed in the <u>Wilson</u> case. That approach is characteristic of Appellant's position, which seems to avoid attention to the expansive rights related to ownership in the Wildflower deed, which clearly distinguishes it from the conveyance in the cases relied on by Appellant.

Additional factors favoring the construction of the Wildflower deed as contended by Appellee are:

1.     Texas Courts have held that it is usual and customary in quitclaim deeds to use the word "quitclaim". *Whitehead v. State*, 724 SW2d 111, 113 (Tex. App. Beaumont, 1987, no writ); *Green v. Mining and Development*, 225 SW 548 (Tex. Civ. App. - Austin, 1920, writ refd).

2.     Texas law is firmly established that a deed is to be construed to confer upon the grantee the greatest estate the instrument will permit. There is a presumption that the parties intend to effect a conveyance. Any doubt should be resolved against the grantor who selects the

16

language. *Waters v. Ellis*, 312 SW2d 231, 234 (Tex. 1958); *Garrett v. Dils Company*, 299 SW2d 904, 906 (Tex. 1957).

"Every part of the deed must be given effect if it can be done and when all parts are harmonized the largest estate that it terms will permit will be conferred upon the grantee. *Cartwright v. Trueblood*, 39 SW 930, 931 (Tex. 1897).

In our case the Grantor, FBGA, received a fee simple title through a general warranty trustee's deed. It is clear from the language in the deed, and the circumstances that the Grantor intended to convey ownership in the property to Wildflower.

## CONCLUSION AND PRAYER

Based on the evidence and principles of law stated in this brief, the Appellee prays that the Court affirm the judgment of the trial court in all respects, with costs of appeal being adjudged against the Appellant.

Respectfully submitted,

THE FOUTS LAW FIRM
1212 13th Street, Ste. 200
P. O. Box 5187
Lubbock, Texas 79408
Telephone:  806/741-0373
Facsimile:  8006/741-1491
E-Mail:  ajfpat@nts-online.net

AUBREY J. FOUTS
SBN 07315000

17

## CERTIFICATE OF COMPLIANCE

Relying on the word counting function of the computer software used to prepare this document, the undersigned certifies that the foregoing instrument contains _6,375_ words.

_Aubrey J Fouts_
OF COUNSEL

## CERTIFICATE OF SERVICE

I certify that a true copy of this Brief of Appellee was served in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure, on each party or that party's lead counsel by Texas E-File system which will send notification of such filing, and by first class mail on this on this _14_ day of July, 2015, as follows:

Mitchell G. Ehrlich
P.O. Box 1258
Perryton, Texas 79070
**melaw@ptsi.net**

Mr. George Whittenburg
WHITTENBURG, WHITTENBURG, STEIN & STRANGE
P. O. Box 31718
Amarillo, Texas   79120-1718
**gwhittenburg@whittenburglaw.com**

_Aubrey J Fouts_
OF COUNSEL

# Appendix
# 1

in a criminal
parties of the
e. If a proper
ninal defen-
trial court
ice, the clerk
t, which will
ule or Rule

eceiving the
he appellate
ies with the
peals' order
rk must en-
d notify the
e clerk must
's record—
t and return
he appellate
truct the of-
ecord to the
iminal case,
et.

r reporter's
ellate clerk
for filing it,
ing that the
inary or re-
appeal. The
otice to the
not receive
k must refer
must make
er delay and

*appellant's*
the clerk's
or make ar-
paring the
n a party's
appeal for
s entitled to
rt must give
cure before

**(c)** *If no reporter's record filed due to appellant's fault.* Under the following circumstances, and if the clerk's record has been filed, the appellate court may—after first giving the appellant notice and a reasonable opportunity to cure—consider and decide those issues or points that do not require a reporter's record for a decision. The court may do this if no reporter's record has been filed because:

**(1)** the appellant failed to request a reporter's record; or

**(2)(A)** appellant failed to pay or make arrangements to pay the reporter's fee to prepare the reporter's record; and

**(B)** the appellant is not entitled to proceed without payment of costs.

2014 change: Amended eff. Jan. 1, 2014, by order of Dec. 13, 2013 (Tex. Sup.Ct. Order, Misc. Docket No. 13-9165); amended eff. Jan. 1, 2014, by order of Dec. 11, 2013 (Tex.Ct.Crim.App. Order, Misc. Docket No. 13-003).

## TRAP 38. REQUISITES OF BRIEFS

**38.1** Appellant's Brief. The appellant's brief must, under appropriate headings and in the order here indicated, contain the following:

**(a)** *Identity of parties and counsel.* The brief must give a complete list of all parties to the trial court's judgment or order appealed from, and the names and addresses of all trial and appellate counsel, except as otherwise provided in Rule 9.8.

**(b)** *Table of contents.* The brief must have a table of contents with references to the pages of the brief. The table of contents must indicate the subject matter of each issue or point, or group of issues or points.

**(c)** *Index of authorities.* The brief must have an index of authorities arranged alphabetically and indicating the pages of the brief where the authorities are cited.

**(d)** *Statement of the case.* The brief must state concisely the nature of the case (e.g., whether it is a suit for damages, on a note, or involving a murder prosecution), the course of proceedings, and the trial court's disposition of the case. The statement should be supported by record references, should seldom exceed one-half page, and should not discuss the facts.

**(e)** *Any statement regarding oral argument.* The brief may include a statement explaining why oral argument should or should not be permitted. Any such statement must not exceed one page and should address how the court's decisional process would, or would not, be aided by oral argument. As required by

Rule 39.7, any party requesting oral argument must note that request on the front cover of the party's brief.

**(f)** *Issues presented.* The brief must state concisely all issues or points presented for review. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.

**(g)** *Statement of facts.* The brief must state concisely and without argument the facts pertinent to the issues or points presented. In a civil case, the court will accept as true the facts stated unless another party contradicts them. The statement must be supported by record references.

**(h)** *Summary of the argument.* The brief must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief. This summary must not merely repeat the issues or points presented for review.

**(i)** *Argument.* The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.

**(j)** *Prayer.* The brief must contain a short conclusion that clearly states the nature of the relief sought.

**(k)** *Appendix in civil cases.*

**(1)** *Necessary contents.* Unless voluminous or impracticable, the appendix must contain a copy of:

**(A)** the trial court's judgment or other appealable order from which relief is sought;

**(B)** the jury charge and verdict, if any, or the trial court's findings of fact and conclusions of law, if any; and

**(C)** the text of any rule, regulation, ordinance, statute, constitutional provision, or other law (excluding case law) on which the argument is based, and the text of any contract or other document that is central to the argument.

**(2)** *Optional contents.* The appendix may contain any other item pertinent to the issues or points presented for review, including copies or excerpts of relevant court opinions, laws, documents on which the suit was based, pleadings, excerpts from the reporter's record, and similar material. Items should not be included in the appendix to attempt to avoid the page limits for the brief.

**38.2** Appellee's Brief.

**(a)** *Form of brief.*

**(1)** An appellee's brief must conform to the requirements of Rule 38.1, except that:

TRAP 38

# Appendix

# 2

# CHAPTER 13. EFFECTS OF RECORDING

Section
13.001. Validity of Unrecorded Instrument.
13.002. Effect of Recorded Instrument.
13.003. Instruments Previously Recorded in Other Counties.
13.004. Effect of Recording Lis Pendens.
13.005. Effect of Recording Judgment of Justice Court.

## § 13.001. Validity of Unrecorded Instrument

(a) A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

(b) The unrecorded instrument is binding on a party to the instrument, on the party's heirs, and on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.

(c) This section does not apply to a financing statement, a security agreement filed as a financing statement, or a continuation statement filed for record under the Business & Commerce Code.

Acts 1983, 68th Leg., p. 3495, ch. 576, § 1, eff. Jan. 1, 1984. Amended by Acts 1989, 71st Leg., ch. 162, § 4, eff. Sept. 1, 1989.